IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANGELO M.,[1] ) | |
| ) | |
|     Plaintiff, ) | |
| ) | No. 24 C 2284 |
| v. ) | |
| ) | Magistrate Judge |
| MICHELLE KING, Acting ) | Daniel P. McLaughlin |
| Commissioner of Social Security,[2] ) | |
| ) | |
|     Defendant. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Angelo M.'s claim for Disability Insurance Benefits ("DIB"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion to reverse the Commissioner's decision [13] is denied, and the Commissioner's cross-motion for summary judgment [18] is granted.

---

[1] In accordance with Internal Operating Procedure 22 – Privacy in Social Security Opinions, the Court refers to Plaintiff only by his first name and the first initial of his last name.

[2] Michelle King has been substituted for her predecessor pursuant to Federal Rule of Civil Procedure 25(d).

# BACKGROUND

## I. PROCEDURAL HISTORY

On April 23, 2021, Plaintiff filed a claim for DIB, alleging disability since March 13, 2020. The claim was denied initially and upon reconsideration, after which Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). A telephonic hearing was held on May 4, 2023, and all participants attended the hearing by telephone. Plaintiff appeared and testified at the hearing and was represented by counsel. A vocational expert ("VE") also testified.

On June 27, 2023, the ALJ denied Plaintiff's claim for benefits, finding him not disabled under the Social Security Act. The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. ALJ DECISION

Plaintiff's claim was analyzed in accordance with the five-step sequential evaluation process established under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of March 13, 2020. At step two, the ALJ concluded that Plaintiff had the following severe impairments: anxiety disorder/obsessive compulsive disorder (OCD); and depressive disorder. The ALJ

2

concluded at step three that Plaintiff's impairments, alone or in combination, do not meet or medically equal any listed impairments.

Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations: can understand, remember, carry out, and sustain no more than routine tasks and no complex tasks and is limited to performing the same tasks day in and day out; can have no contact with the public for work purposes and no more than occasional contact with coworkers and supervisors for work purposes; can engage in no teamwork situations, meaning that he should not have to work with others to complete the same job tasks, but is able to work independently; and can do no work where a machine sets the pace of work. At step four, the ALJ concluded that Plaintiff would be unable to perform his past relevant work as a human resources clerk, accounting clerk, payroll clerk, or insurance clerk. However, at step five, based upon the VE's testimony and Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff can perform jobs existing in significant numbers in the national economy, leading to a finding that he is not disabled under the Social Security Act.

## DISCUSSION

### I. ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which

3

has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform his former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step three, precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at steps one to four. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

II.  **JUDICIAL REVIEW**

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is thus limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial

4

evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). An ALJ's decision should be affirmed even in the absence of overwhelming evidence in support: "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence is . . . 'more than a mere scintilla.' . . . It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, (2019) (citations omitted).

The Seventh Circuit has made clear that ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053-54 (7th Cir. 2024) (citations omitted). All that is required is that "ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow . . . a reviewing court[] to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Id.* at 1054 (citations and internal quotations omitted). Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in

5

evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

### III. ANALYSIS

Plaintiff argues that the ALJ's decision was in error for several reasons, including: (1) the ALJ failed to adequately account for Plaintiff's limitations in concentrating, persisting, or maintaining pace due to his obsessive compulsive disorder; (2) the ALJ erred in evaluating the opinions of Plaintiff's treating psychiatric nurse practitioner; and (3) the ALJ's symptom evaluation was deficient. Each argument will be addressed below in turn.

#### A. Plaintiff's Mental Impairments

In advancing his first argument, Plaintiff contends that the ALJ's "primary error" was that she failed to sufficiently account for Plaintiff's need for redirection and off-task time. ([13] at 5.) Concerning Plaintiff's need for redirection, in her decision, the ALJ noted that medical records evidenced that Plaintiff's "speech was loud and consistent with too many details, but [Plaintiff] was aware and was able to be redirected." (R. 27.) The ALJ further recognized that "[t]reatment notes show that [Plaintiff] is able to be redirected and his thought processes and content are generally within normal limits." (*Id.* at 28.) Additionally, the ALJ noted that Plaintiff was talkative at the hearing but "was able to be redirected . . . and completed the hearing in a timely manner." (*Id.* at 29.) Specifically with respect to

6

her accommodation of Plaintiff's redirection needs, the ALJ then explained as follows:

> The undersigned has considered this when finding that the claimant is limited to understanding, remembering, carrying out, and sustaining no more than routine tasks and no complex tasks, and [I have] limited him to performing the same tasks day in and day out, so that he would not have to maintain attention and concentration to learn new work tasks/processes/procedures.

(*Id.*) The ALJ further explained that Plaintiff's need for redirection required that he be "precluded from work requiring contact with the public for work purposes and teamwork situations and limited to no more than occasional contact with coworkers and supervisors for work purposes." (*Id.* at 32.)

As an initial matter, given these accommodations and the ALJ's explanations regarding same, Plaintiff's assertion that "the residual functional capacity assessment [contained] no limitations related to redirection or off-task time" ([13] at 5) is simply inaccurate. Furthermore, the Court finds that the ALJ sufficiently analyzed Plaintiff's redirection needs and her conclusions and accommodations related to that issue are supported by substantial evidence. *See Emma H. on behalf of S.H. v. Kijakazi*, No. 20 C 4833, 2023 WL 4665767, at *3 (N.D. Ill. July 20, 2023) ("[T]he ALJ did more than summarily conclude that [the claimant] needed occasional redirection, noting occasions where [the claimant] had some difficulty paying attention in group therapy and school but was receptive to redirection, and other times when [the claimant] was difficult to redirect. . . . In other words, the ALJ explicitly weighed the evidence for and against Plaintiff's claims and supported his decision with substantial evidence.").

7

Relatedly, with respect to off-task time, the Court reads the ALJ's decision as considering redirection and off-task behavior in tandem. Furthermore, as Defendant points out, neither of the State agency medical consultants determined that Plaintiff required an accommodation for off-task time. The Court finds it immaterial that the State agency consultants were not specifically asked to estimate an off-task time figure, as Plaintiff protests. Additionally, though APN Reilly opined that Plaintiff required time off task, the ALJ reasonably discounted APN Reilly's opinion as detailed further below. Accordingly, the Court finds Plaintiff's argument concerning off-task time unavailing.

Plaintiff also argues that the ALJ did not sufficiently analyze his OCD symptoms. ([13] at 6.) However, the ALJ did consider Plaintiff's OCD throughout her decision. For instance, the ALJ noted Plaintiff's allegation "that his most concerning symptoms were OCD behaviors involving numbers 3 or 6 and the color red and . . . he was always overthinking things." (R. 27.) The ALJ further recognized that Plaintiff "was engaged in exposure therapy and was able to overcome some OCD issues." (*Id.* at 28.) Additionally, the ALJ noted that Plaintiff had an "understanding that his OCD behaviors were not based in reality" and "medication and therapy were helpful." (*Id.*)[3] The Court finds that the ALJ sufficiently

---

[3] To the extent Plaintiff raises issues concerning the ALJ's consideration of his improvement, the Court finds such challenges unavailing. *See Conor B. v. Kijakazi*, No. 20 CV 3342, 2022 WL 4079461, at *10 (N.D. Ill. Sept. 6, 2022) ("So too was it proper for the ALJ to consider the course and effectiveness of Claimant's treatment, as well as Claimant's reported improvement over time with the assistance of medication, work history, and writing of a book.") (citation omitted); *Dante B. v. Kijakazi*, No. 20-CV-1104, 2022 WL 3926050, at *9 (N.D. Ill. Aug. 31, 2022) ("[I]mprovement *is* a relevant factor that ALJs may consider.").

considered Plaintiff's OCD symptoms and accommodated them by providing multiple nonexertional limitations. *See Michele M. v. Kijakazi*, No. 20 CV 7749, 2023 WL 3479182, at *3 (N.D. Ill. May 16, 2023) ("This is not a case in which the ALJ failed to grapple with the evidence. Instead, she considered and weighed the evidence and assessed an RFC supported by substantial evidence. The court therefore finds that the ALJ sufficiently evaluated Michele's chronic fatigue, edema, and OCD and adequately accounted for them in the RFC analysis.").

Lastly, Plaintiff argues that the ALJ did not sufficiently explain why she precluded work where a machine sets the pace. Pertinent to that assertion, the ALJ explained in her decision that Plaintiff was "precluded from work where a machine sets the pace of work, as the claimant has some difficulty with concentration, persistence, or maintaining pace, which could interfere with him keeping up with the pace of a machine." (R. 29.) The Court finds that the meaning and purpose of the ALJ's accommodation – precluding Plaintiff from working in conveyor-belt environments – is readily understandable. The Court finds no error in the ALJ's provision of a machine-related accommodation.

### B. The ALJ's Evaluation of APN Reilly's Opinions

For his second argument, Plaintiff contends that the ALJ erred in evaluating the opinions of his treating psychiatric nurse practitioner, Brenda Reilly. ([13] at 9-13.) Because Plaintiff filed his claim in 2021, the ALJ was required to evaluate the medical opinion evidence under regulations applicable to claims filed on or after March 27, 2017. 20 C.F.R. § 404.1520c (2017). Under these regulations, the ALJ

9

"will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). An ALJ is instead required to articulate "how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record." 20 C.F.R. § 404.1520c(b). Factors to be considered in this evaluation include supportability, consistency, relationship with the claimant, specialization, and other factors that tend to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c(a), (c). Supportability and consistency are the two most important factors. 20 C.F.R. § 404.1520c(a); *see* 20 C.F.R. § 404.1520c(c)(2) ("The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."). An ALJ's decision must explain how she considered the factors of supportability and consistency, but she is not required to explain how she evaluated the other factors. 20 C.F.R. § 404.1520c(b)(2).

In her decision, the ALJ noted APN Reilly's opinions, including her opinion that Plaintiff "would be off task for 21% or more of a typical workday," would "miss work more than three times per month due to his impairments or treatment," and had "marked limitations in the ability to complete a normal workday and workweek." (R. 31.) The ALJ then assessed APN Reilly's opinions as follows:

> This is not persuasive. APN Reilly is a longstanding mental health provider. However, she did not refer to specific treatment notes to

10

> support the limitations suggested in this form, including absences, needing rest periods, difficulty with supervisors, problems with attention and concentration to perform simple work tasks, and marked limitations in interacting with others and with concentration, persistence, or maintaining pace in general. Indeed, this level of limitation is not reflected in APN Reilly's treatment notes or other treatment notes in the record which show intact mental status examinations as well as the claimant's reports of improvement in symptoms and his daily activities, which is also seen at the psychological consultative evaluation and in his Function Report. It is noted that the claimant is able to attend appointments alone with no evidence of concern that he cannot understand, remember, apply information, concentrate, persist, and maintain pace in order to follow medical directives and take his medications independently. The record does not show significant issues with panic attacks, including treatment, such as emergency room records.

(*Id.* at 31-32 (citations omitted).)

In sum, the ALJ discounted APN Reilly's opinions because they were unsupported by the nurse's treatment notes, inconsistent with the nurse's treatment notes, inconsistent with other treatment notes, inconsistent with Plaintiff's improvement, and inconsistent with Plaintiff's daily activities. Given the ALJ's explicit rationales, the Court finds that the ALJ properly assessed and explicated supportability and consistency in discounting APN Reilly's opinions. *See* 20 C.F.R. § 404.1520c(b)(2). The Court must decline Plaintiff's invitation to reweigh the evidence in relation to APN Reilly's opinions. *See Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). Accordingly, Plaintiff's second argument is unavailing.

### C. <u>The ALJ's Symptom Assessment</u>

For his third argument, Plaintiff contends that the ALJ's symptom evaluation was not supported by substantial evidence. Pertinent to that assertion, the ALJ determined that Plaintiff's alleged symptoms were "not entirely consistent

11

with the medical evidence and other evidence in the record." (R. 27.) Plaintiff asserts in particular that the ALJ erred in assessing his activities of daily living in relation to his alleged symptoms. ([13] at 13-14.) In finding Plaintiff's symptoms not as severe as alleged, the ALJ stated as follows concerning Plaintiff's daily activities:

> In his Function Reports, the claimant stated that he lives in a house with family members. He noted that he provides assistance or care to his mother such as with medication and appointments. The claimant also noted that he feeds and lets the dog out as needed. He is able to perform personal care but described limitations with dressing and bathing due to mobility issues. The claimant stated that he needs reminders or alarms on his phone to take his medications. He is able to prepare food, do laundry, mow the lawn with a rider, and do basic cleaning tasks. The claimant is able to go places alone and can get around walking or driving. He stated that he shops for groceries once a week and is able to manage funds. The claimant described his interests as cooking, cars, video games, movies, board games, and game shows but admitted to some loss of interest and enjoyment. He keeps in touch with people by phone and video chat and also visits in person. The claimant noted that he goes out to eat, to sporting events, and to music events a few times per year. He denied problems getting along with others. The claimant said that he is able to finish what he starts and can follow written and spoken instructions. He reported that he does not handle changes in routine well.

(R. 26 (citations omitted).) The ALJ further stated:

> Regarding daily activities, he testified that he is able to make his bed, do laundry, mop, sweep, and vacuum, but not for long periods. The claimant said that he is able to dust and take out the garbage. He reported that he uses a riding mower to mow the lawn and also uses a snow blower and shovel to remove snow in the winter. The claimant testified that he drives about three times per week. He said that he attends church and occasionally goes out to eat. The claimant stated that he reads the newspaper daily to keep up with current events. He enjoys watching TV and movies. The claimant said that he checks his email 2-3 times per day and uses a cell phone as well as a laptop. He testified that he is on Facebook and checks this once a day. The claimant reported that he assists his mother with appointments, medications, and making sure that she eats properly. He noted that another sibling also provides assistance to their mother but denied that their mother requires assistance with mobility. The claimant testified that he does

> have some friends but said that he does not do things with them as often as he had previously due to pain and more difficulty getting around.

(R. 26-27.)

The Court finds no error in the ALJ's consideration of Plaintiff's daily activities. The ALJ did not improperly equate Plaintiff's daily activities with an ability to work full time. Rather, the ALJ appropriately read into Plaintiff's relatively active lifestyle that his asserted impairments were not as severe as alleged. *See Darryl S. v. Kijakazi*, No. 22 C 3827, 2023 WL 3169617, at *4 (N.D. Ill. Apr. 28, 2023). Plaintiff contends that the ALJ did not consider the difficulties he faced in performing daily activities. That assertion is inaccurate, as the ALJ did account for qualifications concerning Plaintiff's daily activities. For instance, the ALJ considered that he allegedly needed reminders, could not sustain activities for long periods, and had decreased his social activity. Accordingly, Plaintiff's arguments concerning his relatively extensive daily activities are unavailing.

Plaintiff also argues that the ALJ erred in considering his intact mental status examinations. Pertinent to that contention, the ALJ discounted Plaintiff's statements "because the record as a whole shows intact mental status examinations with good response to medication and therapy and no exacerbation of mental health symptoms or need for a higher level of care." (R. 27.) The Court must reject Plaintiff's argument on this topic because "ALJs may consider consistently normal mental status examination findings in assessing a claimant's symptoms as one piece of evidence to weigh against the rest." *Christopher R. v. Kijakazi*, No. 21 CV 500, 2023 WL 5017942, at *4 (N.D. Ill. Aug. 7, 2023) (citations omitted). That is what the

ALJ properly did here. *See id.* ("The evidence of normal mental status and mood during medical examinations on several occasions, coupled with evidence that Christopher's condition did not worsen to the point that it warranted more aggressive treatment, undercuts Christopher's claims that his mental health was debilitating. Accordingly, the ALJ's analysis was not erroneous.").

More generally, with respect to the ALJ's finding that Plaintiff's alleged symptoms were not fully credible, this Court gives "the ALJ's credibility finding special deference and will overturn it only if it is patently wrong." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) (internal quotations and citation omitted). "[P]atently wrong . . . means that the decision lacks any explanation or support." *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (citation omitted). Here, in his decision, the ALJ discussed and analyzed Plaintiff's alleged symptoms and reasonably determined that Plaintiff's alleged symptoms were not fully corroborated. *See Ray v. Saul*, 861 F. App'x 102, 107 (7th Cir. 2021) ("Because the ALJ's weighing of [claimant's] reported symptoms in the context of the whole record is supported by substantial evidence, we find no reversible error on this front either."); *Schrank v. Saul*, 843 F. App'x 786, 789 (7th Cir. 2021) ("[T]he ALJ's credibility determination was not 'patently wrong,' because she found [claimant] not credible for several reasons that were adequately supported by the record.") (citation omitted); *cf. Lacher v. Saul*, 830 F. App'x 476, 478 (7th Cir. 2020) ("The ALJ's rationale here was thin, but it was adequate to reflect her conclusion that the objective medical evidence and Lacher's daily activities did not corroborate his

14

subjective symptoms."). Plaintiff has not shown that the ALJ's evaluation of his subjective symptoms was "patently wrong," as was Plaintiff's burden. *See Horr v. Berryhill*, 743 F. App'x 16, 19–20 (7th Cir. 2018). Accordingly, Plaintiff's challenge to the ALJ's symptom assessment must fail.

## CONCLUSION

For the foregoing reasons, the points of error raised by Plaintiff are not well taken. Accordingly, Plaintiff's motion to reverse the Commissioner's decision [13] is denied, and the Commissioner's cross-motion for summary judgment [18] is granted.

**SO ORDERED.**  **ENTERED:**

**DATE:   February 7, 2025**

**HON. DANIEL P. McLAUGHLIN**
**United States Magistrate Judge**